J-S18045-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DEMETRIUS LAWRENCE WILLIAMS, | : | |
| | : | |
| Appellant | : | No. 1492 MDA 2015 |

Appeal from the Judgment of Sentence April 9, 2015
in the Court of Common Pleas of Lycoming County,
Criminal Division, at No(s): CP-41-CR-0000681-2014

BEFORE:   BOWES, LAZARUS, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:            **FILED APRIL 26, 2016**

Demetrius Lawrence Williams (Appellant) appeals from the judgment of sentence[1] entered following his convictions for statutory sexual assault, aggravated indecent assault without consent, aggravated indecent assault - complainant less than 16 years of age, indecent assault without consent, indecent assault - complainant less than 16 years of age, sexual assault, and retaliation against a witness or victim.  We affirm.

On October 30, 2014, following a jury trial, Appellant was convicted of a number of crimes related to the sexual assault of S.S., who was thirteen years old at the time the offenses occurred.  On April 9, 2015, Appellant was

_____

[1] Appellant purports to appeal from both his judgment of sentence and the August 13, 2015 order denying his post-sentence motion. We have corrected the caption to reflect that Appellant's appeal properly lies from the judgment of sentence entered on April 9, 2015. ***Commonwealth v. Dreves***, 839 A.2d 1122, 1125 n.1 (Pa. Super. 2003) (*en banc*).

*Retired Senior Judge assigned to the Superior Court.

sentenced to an aggregate term of seven and one half to 16 years of incarceration, along with mandatory lifetime sexual offender registration. Appellant was not designated as a sexually violent predator. Appellant timely filed a post-sentence motion, which was denied by the trial court on August 13, 2015. This timely-filed appeal followed. On September 3, 2015, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied, and the trial court filed its Pa.R.A.P. 1925(a) opinion on October 19, 2015.

Appellant raises three issues for our review.

I. Whether the evidence was insufficient to sustain a verdict of guilty on all charges.

II. Whether the trial court erred in refusing to grant a new trial by finding that the weight of the evidence was sufficient to sustain convictions on all charges.

III. Whether the trial court erred in finding that the sentence imposed upon [Appellant] was not excessive in nature.

Appellant's Brief at 7 (issues reordered for ease of disposition; unnecessary capitalization omitted).

In his first two questions, Appellant challenges the weight and sufficiency of all six of his convictions. In his argument, Appellant conflates these two concepts. Appellant's Brief at 13-19.

Our Supreme Court has explained:

[I]t is necessary to delineate the distinctions between a claim challenging the sufficiency of the evidence and a claim that challenges the weight of the evidence. The distinction between

- 2 -

these two challenges is critical. A claim challenging the sufficiency of the evidence, if granted, would preclude retrial under the double jeopardy provisions of the Fifth Amendment to the United States Constitution, and Article I, Section 10 of the Pennsylvania Constitution, whereas a claim challenging the weight of the evidence if granted would permit a second trial.

A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence, do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (citations and footnote omitted).

With respect to Appellant's sufficiency-of-the-evidence claims, our standard of review is well-settled:

> whether[,] viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 716 (Pa. Super. 2015) (citation omitted).

Before we address Appellant's issues on the merits, we must determine whether they have been preserved properly for our review. With respect to sufficiency-of-the-evidence claims, it is well-settled that the 1925(b) statement needs to specify the element or elements upon which the evidence was insufficient, or the claim may be waived. *Commonwealth v. Williams*, 959 A.2d 1252, 1257-58 (Pa. Super. 2008). However, even if a sufficiency claim is vague, this Court may review it where the case is straightforward, the record is not long and complex, the trial court readily apprehended the appellant's claim, and the trial court thoroughly addressed

the merits of the claim in its opinion. *Commonwealth v. Laboy*, 936 A.2d 1058, 1060 (Pa. 2007).

In his 1925(b) statement, Appellant asserts general sufficiency challenges for each of his seven convictions, but fails to specify which element or elements of each crime he is challenging. Appellant's Concise Statement, 10/2/2015. Nonetheless, in its 1925(a) opinion, the trial court addressed each claim in turn. Trial Court Opinion, 8/14/2015, at 8-14. Accordingly, we decline to find waiver. *Laboy, supra*. Moreover, following our review of the certified record, the parties' briefs, and the relevant law, we conclude that the opinion of the Honorable Nancy L. Butts states findings of fact that are supported by the record, evidences no abuse of discretion or errors of law, and thoroughly and correctly addresses and disposes of Appellant's sufficiency-of-the-evidence issues and supporting arguments. Accordingly, we adopt pages 1 through 14 of the trial court's opinion, filed on August 14, 2015, as our own in resolving Appellant's sufficiency claims.

We turn next to Appellant's weight-of-the-evidence challenge.

The law pertaining to weight of the evidence claims is well-settled. The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. A new trial is not warranted because of a mere conflict in the testimony and must have a stronger foundation than a reassessment of the credibility of witnesses. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

> On appeal, our purview is extremely limited and is confined to whether the trial court abused its discretion in finding that the jury verdict did not shock its conscience. Thus, appellate review of a weight claim consists of a review of the trial court's exercise of discretion, not a review of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 723 (Pa. Super. 2015) (quotation marks and citations omitted).

Here, Appellant assails the credibility of S.S.'s testimony, arguing that she should not be believed because she was under the influence of marijuana at the time of the alleged assault and the Commonwealth failed to prove that the alleged penetration occurred without S.S.'s consent. Appellant's Brief at 13-16. Thus, Appellant asks us to reweigh the evidence in his favor. Our case law is clear that a jury sitting as finder of fact is "in the best position to view the demeanor of the Commonwealth's witnesses and to assess each witness' credibility." *Commonwealth v. Olsen*, 82 A.3d 1041, 1049 (Pa. Super. 2013) (citation omitted). Here, the jury was presented the testimony of S.S., Appellant's friend, and two Williamsport Bureau of Police Agents. Appellant did not testify on his own behalf. The jury was free to find the Commonwealth's witnesses' testimony credible and resolve any inconsistencies in the Commonwealth's favor. *See generally Commonwealth v. Horne*, 89 A.3d 277, 286 (Pa. Super. 2014) (holding that Horne's weight of the evidence claim could not prevail as "the jury resolved the inconsistencies among the testimonies as it saw fit and reached

a verdict."). Based on the foregoing, the trial court determined that the verdict was not against the weight of the evidence. We discern no abuse of discretion in the trial court's finding. Accordingly, Appellant's weight claim does not warrant relief.

In his final claim, Appellant asks this Court to consider whether the trial court abused its discretion by imposing a sentence that is manifestly excessive and unreasonable. Appellant's Brief at 20-22.

An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

*Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (citation omitted).

The record reflects that Appellant timely filed a notice of appeal and that Appellant preserved this issue by including it in his motion for reconsideration of his sentence. Moreover, Appellant has included in his brief a statement pursuant to Pa.R.A.P. 2119(f). We now turn to whether Appellant has presented a substantial question for our review.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa. Super. 2007). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Griffin*, 65 A.3d at 935 (citation and quotation marks omitted).

Appellant's brief contains a 2119(f) statement. In his statement, Appellant makes a bald assertion that his aggregate sentence is excessive and inappropriate under the Sentencing Code. Appellant's Brief at 9-10. However, he fails to specify which particular provision of the Code was violated or which aspect of his standard-range sentence was contrary to the fundamental norms underlying the sentencing scheme.[2] *Id.* It is well-settled that bald claims of excessiveness do not present a substantial question. *Commonwealth v. Lutes*, 793 A.2d 949, 964 (Pa. Super. 2002).

Further, our Supreme Court has held that

---

[2] We note that "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010). Additionally, where, as here, the sentencing court had the benefit of a pre-sentence investigation report "we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Id.*

only where the appellant's Rule 2119(f) statement sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process, will such a statement be deemed adequate to raise a substantial question so as to permit a grant of allowance of appeal of the discretionary aspects of the sentence.

*Commonwealth v. Mouzon*, 812 A.2d 617, 627 (Pa. 2002).

Accordingly, because Appellant has failed to raise a substantial question, he is not entitled to relief.

For all of the foregoing reasons, we affirm Appellant's judgment of sentence. The parties shall attach a copy of the trial court's August 14, 2015 opinion in the event of further proceedings.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/26/2016

IN THE COURT OF COMMON PLEAS OF LYCOMING COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA     :
                                    :        CR-681-2014
    v.                             :
                                      :

DEMETRIUS LAWRENCE WILLIAMS,    :        CRIMINAL DIVISION
    Defendant                   :

## OPINION AND ORDER

On April 20, 2015, the Defendant filed a timely post-sentence motion. Argument on the motion was held on May 14, 2015. Defense Counsel did not argue any issues other than those in the motion.

### I. Background

### A. Convictions and Sentences

On October 30, 2014, a jury found the Defendant guilty of Statutory Sexual Assault,[1] Aggravated Indecent Assault without Consent,[2] Aggravated Indecent Assault on a Person under 16 and the Defendant being Four or More Years Older,[3] Indecent Assault without Consent,[4] Indecent Assault on a Person under 16 and the Defendant being Four or More Years Older,[5] Intimidation of a Witness or Victim,[6] and Sexual Assault.[7]

On April 9, 2015, the Court sentenced the Defendant to three to six years of incarceration on the Sexual Assault, two to four years of incarceration on the Aggravated Indecent Assault of a Person under 16, one to three years of incarceration on the Statutory Sexual Assault, and 18 months to three years of incarceration on the Intimidation of a Witness or Victim. All of these

---

[1] 18 Pa.C.S. § 3122.1(a).
[2] 18 Pa.C.S. § 3125(a)(1).
[3] 18 Pa.C.S. § 3125(a)(8).
[4] 18 Pa.C.S. § 3126(a)(1).
[5] 18 Pa.C.S. § 3126(a)(8).
[6] 18 Pa.C.S. § 4952(a).
[7] 18 Pa.C.S. § 3124.1.

sentences were to run consecutively to each other for aggregate sentence of seven and a half years to 16 years of incarceration.

The Defendant was sentenced to three months to 24 months of incarceration on the Aggravated Indecent Assault without Consent, three months to 24 months of incarceration on the Indecent Assault without Consent, and three months to 24 months of incarceration on the Indecent Assault of a Person under 16. The three to 24 month sentences are to run concurrently with each other and concurrently with the Sexual Assault sentence.

**B. S.S.'s Testimony**

S.S. was born on May 22, 2000. In July of 2013, the Defendant and S.S. started sending messages to each other through the website Facebook. S.S. and the Defendant exchanged phone numbers and communicated "on and off."

On February 22, 2014, the ex-girlfriend of S.S.'s brother picked S.S. up at the house of one of S.S.'s friends. S.S. asked the ex-girlfriend to take her to the house of S.S.'s boyfriend. Nobody answer the door at the boyfriend's house, so S.S. went to the house of M.M., a friend of S.S.'s boyfriend. The Defendant answered the door; this was the first time S.S. saw the Defendant in person. S.S. asked if M.M. was home, and the Defendant responded that she would be home in a little bit. After the Defendant said that S.S. could come inside and wait, S.S. entered the house. The Defendant then asked S.S. if she wanted to smoke marijuana, and S.S. said yes. The Defendant and S.S. talked and smoked about two marijuana blunts. After smoking, S.S. was sluggish, and her arms and legs felt heavy. S.S. and the Defendant were sitting on the same couch, and the Defendant asked S.S. to move closer to him. The Defendant "lightly grabbed" S.S.'s arm and "guided [her] over to his lap." S.S. and the Defendant talked for a little bit before the following occurred:

2

[T]hen [the Defendant] like stood [S.S] up[8] so [S.S.] was standing like right in front of him and he was sitting on the couch and then he unbuttoned [S.S's] pants like and he just pulled them down like mid – like halfway down [S.S.'s] thigh and then [S.S.] was like whoa, what are you doing? And he didn't say anything and then he fingered [S.S.], which is his finger in [S.S.'s] vagina, and then [S.S.] like slowly kind of sat down cause [she] was uncomfortable and like [S.S] kept saying no and like stop and tried to like push back and get away from him.

N.T., 10/30/14, at 13.

The Defendant did not say anything in response to S.S. After about two minutes, he stopped "fingering" S.S. He then asked S.S. to give him a "blow job," and S.S. said no. The Defendant "kept trying to like force [S.S's] head down; but [S.S.] was pushing on him like away." N.T., 10/30/14, at 14. The following then occurred:

Then [the Defendant] kind of – like [S.S.] laid – [the Defendant] like – he didn't push [S.S.], but like he kind of like put his hand here and [S.S.] laid down on the couch and he pulled [S.S.'s] pants off the rest of the way and [S.S] was trying to like keep him off [her] legs, like trying to like bend [her] legs so they would stay on; but then he took them off and then he tried to have sex with [S.S] with [her] underwear like still half on, but pulled them to the side and then it didn't work so he took [S.S.'s] underwear off and then the whole time [S.S.] was saying no and like trying to like scooch back so [she] could get further away from him and then he had sex with [S.S.] for about seven minutes and then he got up and left.

Id. at 14-15.

S.S. lay on the couch for a couple of seconds, then put her clothes back on and started to leave the house. Via text message, she asked her friend if he would come get her. S.S. then went to the friend's house before spending the night at her boyfriend's house.

The next day, S.S.'s boyfriend asked her if she wanted to go back to M.M.'s house. S.S. said that she did not want to go and was just going to stay at the boyfriend's house. However, S.S. eventually went to M.M.'s house with her boyfriend. S.S. did not say anything to the Defendant, who was in the house. She was "trying to make things like go quicker" and "was

---

[8] When S.S. said the Defendant stood her up, she meant the Defendant was "just kind of like grabbing [her] hips and like pushing up." N.T., 10/30/14, at 53.

3

like, hey, [boyfriend], can we go now like?" N.T., 10/30/14, at 17. While S.S. was in the house, she was uncomfortable and scared. Later in the day, after S.S. left the house, she sent the Defendant a text message, which said "hey." She sent the message because the Defendant had sent her a message "the night before."

S.S. did not tell anybody about the sex until she told her mother on February 24, 2014, a few days after the incident. S.S.'s mother took her to the police station. Also on February 24, 2014, S.S. sent a text message to the Defendant's phone. The message was the following:

> [C]an you just stop talking to me. I didn't want to have sex with you. I kept saying no and stop. I'm scared to be around you just leave me and leave you or leave me alone please.

N.T., 10/30/14, at 20. The user of the Defendant's phone replied, "[H]a, all right, have a good life." Id.

Later, the user of the Defendant's phone sent S.S. a text message that said, "[G]ood morning Boo, a heart, have a good day. I love you lol." Id. at 21. S.S. responded, "[I]f you love me then why did you make me have sex with you? I kept saying no and stop." Id. The user answered, "[J]ust know I love you and I don't want to talk about it over the phone." Id. S.S. then asked, "[H]ow are we going to talk about it? Message me on Facebook." Id.

Later, the user of the Defendant's phone asked S.S. what she was doing. S.S. responded, "[C]an we please talk about what happened?" Id. The user answered, "[Y]eah, Boo, can you call me?" Id. S.S. replied that she did not have any minutes left on her phone. The user then asked, "[W]hat do you want to talk about?" Id. S.S. responded, "[W]hy did you do it when I kept saying no?" Id. The user then answered, "I don't know, but I'm sorry I hurt you and I won't do what I did again. I really love you and I'm sorry baby." Id. S.S. then said, "[Y]ou made me have sex with you and I said no and you wouldn't stop. How can you say you love me

4

after all of that?" Id. The user responded, "[C]ause I do. I loved you before all that happened. I really am sorry for real. It didn't seem like you cared the next day though." Id. at 21-22. S.S. testified that she believed the messages were from the Defendant because of the abbreviations, the misspellings, the manner of the talk, and the pet names in the messages.

S.S. told her friend, N.S., about what had happened with the Defendant. The Defendant was sending N.S. messages on the website Facebook. N.S. responded, "like get away from me you pedo, all this stuff." N.T., 10/30/14, at 37.

On or before March 11, 2015, the user of the Defendant's Facebook account posted the following message on the Defendant's Facebook website: $50 for whoever f-u-c-c up [N.S.] and [S.S]. N.T., 10/30/14, at 33. S.S. "took [the message] as a threat." Id. She believed that the Defendant wrote that message because she knew the Defendant spelled the "F" word f-u-c-c, and "like the way he talked was the same way he texted me." Id. at 32. The user of the Defendant's Facebook account also posted the following message on the website Facebook: [K]eep calling me a pedo ya all mother F'ers about to learn. Id. at 33. As of October 29, 2014, S.S. was a friend of the Defendant on Facebook.

On March 15, 2015, S.S. received a text message from "a different number." N.T., 10/30/14, at 26. The message was "WTF,[9] yo." S.S. replied with a message which said, "[W]ho is this?" Id. S.S. then received a message that said, "[W]hy didn't you come see me yesterday?" Id. At this point, S.S. believed that the Defendant was sending the messages because S.S. and the Defendant "had just talked on Facebook about hanging out and he said why didn't you come see me yesterday and he was the only person that I made plans with." Id. S.S. sent a message which said, "I'm grounded." Id. She then received a message that said, "[W]hat happened, Boo? You better start acting right." Id. S.S. responded, "I got to go, if my mom sees me on my

---

[9] S.S. testified that WTF means "like what the F." N.T., 10/30/14, at 25.

phone I'll get in more trouble." Id. She then received a message that said, "K. I'm gonna text you later though because I'm gonna have to tell you something important." Id. S.S. did not respond. Id.

Later, S.S. received the following message from the same phone:

[Y]o, we have to talk about all this BS about this rape. You know I didn't rape you. You let me take your clothes off and when you said no you looked me in my face and winked, and you was like, look, I got to go down somewhere Monday and I need to know that you're not gonna tell the law that I did that and lie to them. I really love you and these other little girls you got to tell them to chill, all right.

N.T., 10/30/14, at 26-27. S.S. responded, "I don't even know how to wink so that's wrong and I said no way more than once and I didn't let you take my clothes off. I didn't want you to." Id. at 27. S.S. then received the following message:

Then why did you get naked? I did not rape you. You should ask my mom what rape is or somebody who did get raped. I told you I'm sorry for my selfishness, but I did not want – I did not rape you. I really love you and I want you in my life forever and I told you I'm gonna make this up to you. I'm gonna take you out shopping, but I need to know that you're not gonna tell the law.

Id. at 27. S.S. replied, "[W]hy would you say sorry if you didn't do anything wrong?" Id. She then received a message which said, "[A]re you for real? You don't know how to wink? Everybody knows how and how did your clothes get off?" Id. at 28. S.S. then responded, "I really can't and you took them off." Id. She then received a message that said, "[C]ause I want you to feel better in any way – in any way I can and I'm sorry for you having to deal with any of my BS from any of this, okay." Id. S.S. then received another message which said the following:

[Y]ou can't wink lol you're funny and you could have stopped me if you really didn't want me to do anything with you. You could have left and you know it. I don't know what you want from me [S.S.], but I love your little white ass for real so can we stop this rape talk.

6

Id. S.S. replied, "I said no and stop a million times and then you're [trying to get me to suck your dick]. Like no, I did not – I did try to make you stop. I had to push you off me." Id. She then received a message which said, "No, so what now?" Id. at 29. S.S. responded, "FYM."[10] Id. She then received a message that said, "I don't know, Boo, I don't care what anyone else says, but I really didn't rape you. Can we move on from this." Id.

## C. Keith Wright's Testimony

Keith Wright (Wright) has been friends with Defendant for probably eight years. Wright and the Defendant would play video games, watch movies, and occasionally get snacks at the store. Wright would sometimes have the Defendant sneak into Wright's house because Wright's parents sometimes did not want the Defendant at the house. On February 24, 2014, via the website Facebook, Wright sent the Defendant a message which said, "[Y]ou can probably leave they probably upstairs just be quiet." N.T., 10/30/14, at 85. Later on February 24, Wright sent the Defendant a message that said, "[Y]ou gotta act like you leavin, [my dad's] really [upset]. Just go to the store until they go up and then you can come back." Id.

Wright received a letter from Lycoming County Prison. He believes that the Defendant sent the letter because the Defendant's name was on the letter, and he recognized the handwriting as the Defendant's handwriting. The letter said the following:

> What's up Keith? They should be coming to talk to you soon. Just tell them this, I spent the night there all weekend and on February the 22nd we played video games and watched TV. We went to the store across the street once or twice, but you don't remember what times. I was with you all day that day. I need you to come through for me bro. I could be going to trial before November the 7th. I'm going to keep trying to call you on your dad's number. Hope things are going good.

N.T., 10/30/14, at 79.

---

[10] S.S. testified that "FYM" means, "What the F do you mean?" N.T., 10/30/14, at 39.

7

Wright later received another letter. He recognized the handwriting as the Defendant's handwriting. The letter said the following:

> What's up bro? Your dad told me to call the next day, but there was no time on the phone. I'm gonna keep trying though. I know I just wrote you, but I want to make sure that you remember and are clear on everything. They should be coming to talk to you soon. This is what you tell them, I spent the night there all weekend. On the day they saying this happened we went to the store across the street, but you don't remember what time and we were only there for five to ten minutes. We watched TV and played video games while I was at your house and I stayed at your house until March, sometimes days – some days without your mom and dad knowing. Please remember this stuff because this is my life on the line here, bro.

N.T., 10/30/14, at 81. Wright does not remember whether the Defendant was with him on the days from February 20, 2014 to February 28, 2014.

## D. Agent Eric Delker's Testimony

Eric Delker (Delker) was an agent with the Williamsport Bureau of Police. After Delker saw the message "$50 for whoever f-u-c-c up [N.S.] and [S.S]," he told S.S. to not "unfriend" the Defendant on Facebook. He also told S.S. to not block the Defendant's cell phone. Delker did not know the location of the Defendant, so he wanted potential avenues to locate the Defendant. The Defendant told Delker that he was born on October 10, 1991, which made the Defendant 22 years old on February 22, 2014.

## E. Defendant's Arguments

First, the Defendant argues that the evidence is insufficient for Statutory Sexual Assault because Commonwealth failed to prove the element of sexual intercourse. Second, the Defendant argues that the evidence is insufficient for Aggravated Indecent Assault without Consent because the Commonwealth failed to prove the element of penetration and the element of without consent. Third, the Defendant argues that the evidence is insufficient for Aggravated

8

Indecent Assault of a Person under 16 because the Commonwealth failed to prove the element of penetration. Fourth, the Defendant argues that the evidence is insufficient for Indecent Assault without Consent because the Commonwealth failed to prove the element of indecent contact and the element of without consent. Fifth, the Defendant argues that the evidence is insufficient for Indecent Assault on a Person under 16 because the Commonwealth failed to prove the element of indecent contact. Sixth, the Defendant argues that the evidence is insufficient for Sexual Assault because the Commonwealth failed to prove the element of sexual intercourse and the element of without consent. Seventh, the Defendant argues that the evidence is insufficient for Intimidation of a Witness of Victim because the Commonwealth failed to prove that the Defendant intimidated or attempted to intimidate a witness or victim to refrain from informing or reporting to any law enforcement officer, prosecuting official or judge concerning any information, document or thing relating to the commission of a crime. In support of this argument, the Defendant notes that there is no evidence that the Defendant knew S.S. would read the information on Facebook and there is no evidence that the Defendant knew S.S. made a criminal complaint against him. Eight, the Defendant argues that the verdicts are against the weight of the evidence. Ninth, the Defendant argues that the sentence is excessive.

## II. Discussion

### A. The Evidence is Sufficient for Statutory Sexual Assault.

The following is the standard courts apply when reviewing the sufficiency of the evidence:

> The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and

9

circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence. Furthermore, when reviewing a sufficiency claim, our Court is required to give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

However, the inferences must flow from facts and circumstances proven in the record, and must be of such volume and quality as to overcome the presumption of innocence and satisfy the jury of an accused's guilt beyond a reasonable doubt. The trier of fact cannot base a conviction on conjecture and speculation and a verdict which is premised on suspicion will fail even under the limited scrutiny of appellate review.

Commonwealth v. Slocum, 86 A.3d 272, 275-76 (Pa. Super. 2014).

A person commits Statutory Sexual Assault "when that person engages in sexual intercourse with a complainant to whom the person is not married who is under the age of 16 years and that person is [at least 4 years older] than the complainant." 18 Pa.C.S. § 3122.1. "Sexual intercourse 'in addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission is not required.'" Commonwealth v. Kelley, 801 A.2d 551, 554 (Pa. 2002) (quoting 18 Pa.C.S. § 3101)). "The 'ordinary meaning' of sexual intercourse is not defined in the statute, but it refers to penetration of the vagina by the penis." Commonwealth v. Brown, 711 A.2d 444, 450 (Pa. 1998).

"[The Superior Court of Pennsylvania] has long-recognized 'that the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from defense witnesses.'" Commonwealth v. Charlton, 902 A.2d 554, 562 (Pa. Super. 2006) (quoting Commonwealth v. Davis, 650 A.2d 452, 455 (Pa. Super. 1994)).

10

Here, S.S. testified that the Defendant had sex with her for about seven minutes. N.T., 10/30/14, at 15. Therefore, the Commonwealth offered sufficient evidence to prove the element of sexual intercourse.

## B. The Evidence is Sufficient for Aggravated Indecent Assault without Consent.

"An individual commits aggravated indecent assault when that person 'engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures' and: (1) the person does so without the complainant's consent . . . ." Kelley, 801 A.2d at 557 (quoting 18 Pa.C.S. § 3125). "Digital penetration is sufficient to support a conviction for aggravated indecent assault, as is penetration with the defendant's penis." Commonwealth v. Gonzalez, 109 A.3d 711, 723 (Pa. Super. 2015) (citations omitted).

Here, S.S. testified that the Defendant put his finger in her vagina. S.S. testified that she "was uncomfortable and like [she] kept saying no and like stop and tried to like push back and get away from him." N.T., 10/30/14, at 13. S.S. further testified that the Defendant was "fingering" her for about two minutes. Id. at 14. In addition, S.S. testified that the Defendant had sex with her after she said no and tried to "scooch back." Id. at 15. The above evidence is sufficient to prove the elements of penetration and without consent.

## C. The Evidence is Sufficient for Aggravated Indecent Assault of a Person under 16 and the Defendant Being Four of More Years Older.

"An individual commits aggravated indecent assault when that person 'engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures'

11

and . . . (8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other." Kelley, 801 A.2d at 557-58 (quoting 18 Pa.C.S. § 3125).

Here, S.S. testified that the Defendant put his finger in her vagina and had sex with her. Therefore, the Commonwealth offered sufficient evidence to prove the element of penetration.

**D. The Evidence is Sufficient for Indecent Assault without Consent.**

"A person is guilty of indecent assault if the person has indecent contact with the complainant [or] causes the complainant to have indecent contact with the person . . . and: (1) the person does so without the complainant's consent . . . ." 18 Pa.C.S. § 3126(a). Indecent contact is "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S. § 3101.

Here, S.S. testified that the Defendant put his finger in her vagina. S.S. testified that she "was uncomfortable and like [she] kept saying no and like stop and tried to like push back and get away from him." N.T., 10/30/14, at 13. S.S. further testified that the Defendant was "fingering" her for about two minutes. Id. at 14. In addition, S.S. testified that the Defendant had sex with her after she said no and tried to "scooch back." Id. at 15. The above evidence is sufficient to prove the elements of indecent contact and without consent.

**E. The Evidence is Sufficient for Indecent Assault of a Person Under 16 and the Defendant being Four or More Years Older.**

"A person is guilty of indecent assault if the person has indecent contact with the complainant [or] causes the complainant to have indecent contact with the person . . . and . . . (8) the complainant is less than 16 years of age and the person is four or more years older than the

12

complainant and the complainant and the person are not married to each other." 18 Pa.C.S. § 3126(a).

Here, S.S. testified that the Defendant put his finger in her vagina and had sex with her. Therefore, the Commonwealth offered sufficient evidence to prove the element of indecent contact.

## F. The Evidence is Sufficient for Sexual Assault.

A person commits sexual assault "when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent." 18 Pa.C.S. § 3124.1. Here, S.S. testified that the Defendant had sex with her after she said no and tried to "scooch back." N.T., 10/30/14 at 15. Therefore, the Commonwealth offered sufficient evidence to prove the elements of sexual intercourse and without consent.

## G. The Evidence is Sufficient for Intimidation of a Witness or Victim.

The following is the pertinent part of the definition of Intimidation of Witnesses or Victims:

> A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:
>
> (1) Refrain from informing or reporting to any law enforcement officer, prosecuting official or judge concerning any information, document or thing relating to the commission of a crime.
>
> (2) Give any false or misleading information or testimony relating to the commission of any crime to any law enforcement officer, prosecuting official or judge.
>
> (3) Withhold any testimony, information, document or thing relating to the commission of a crime from any law enforcement officer, prosecuting official or judge.

13

Commonwealth v. Lynch, 72 A.3d 706, 708 (Pa. Super. 2013) (quoting 18 Pa.C.S. § 4952(a)). The Commonwealth may rely wholly on circumstantial evidence to prove the elements of intimidation of a witness. See Commonwealth v. Collington, 615 A.2d 769, 770 (Pa. Super. 1992).

Here, S.S. testified that, on or before March 11, 2013, the user of the Defendant's Facebook account posted the following message on the Defendant's Facebook website: $50 for whoever f-u-c-c up [N.S.] and [S.S]. N.T., 10/30/14, at 33. S.S. "took [the message] as a threat." Id. The message was posted on Facebook, a site that is broadly accessible and has as its purpose social networking. The timing and the content of the message permit the inference that it was written and posted for the purpose of intimidating S.S. to give false information or refrain from giving information to law enforcement about her contact with the Defendant on February 22, 2014. Therefore, the evidence is sufficient for Intimidation of a Witness or Victim.

**H. The Verdicts are not Against the Weight of the Evidence.**

The following is the standard courts apply when reviewing weight of the evidence claims:

> The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.
> [A] new trial [should be granted] only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when 'the figure of Justice totters on her pedestal,' or when 'the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.'

Commonwealth v. Boyd, 73 A.3d 1269, 1275-76 (Pa. Super. 2013).

Here, S.S. did not immediately tell somebody about the sex with the Defendant, but the jury did receive the failure to make a prompt complaint instruction. N.T., 10/30/14, at 150-51.

14

In messages to S.S., the Defendant said that he did not rape her, but the user of the Defendant's phone also sent a message that said, "I don't know, but I'm sorry I hurt you and I won't do what I did again. I really love you and I'm sorry baby." N.T., 10/30/14, at 21. On the day after the sex, S.S. went back to the house where the Defendant was staying and sent a text message to the Defendant. Nevertheless, after considering all of the evidence, the guilty verdicts do not shock this Court's sense of justice.

## I. The Sentence is not Excessive.

The Defendant argues that an aggregate sentence of 15 years and 3 months to 47 years is excessive. It must be noted that the Court did not sentence the Defendant to 15 years and 3 months to 47 years. The Court sentenced the Defendant to incarceration for an aggregate minimum of seven and a half years to an aggregate maximum of 16 years.[11] This sentence is not excessive. The Court reviewed a pre-sentence investigation report on the Defendant. In addition, all of the Defendant's sentences are within the standard range of the sentencing guidelines. "[W]here a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." Commonwealth v. Moury, 992 A.2d 162, 171 (Pa. Super. 2010). Therefore, the sentence is not excessive.

---

[11] The Defendant notes this in paragraph 32 of the motion.

15

## III. Conclusion

The evidence is sufficient for all of the Defendant's convictions. The verdicts are not against the weight of the evidence as they do not shock this Court's sense of justice. The aggregate sentence of incarceration for seven and a half years to 16 years is not excessive.

## ORDER

AND NOW, this ___13th___ day of August, 2015, based upon the foregoing Opinion, it is ORDERED and DIRECTED that the Defendant's Post-Sentence Motion is hereby DENIED. Pursuant to Pennsylvania Rule of Criminal Procedure 720(B)(4), the Defendant is hereby notified of the following: (a) the right to appeal this Order within thirty (30) days of the date of entry of this Order; (b) the right to assistance of counsel in the preparation of the appeal; (c) if indigent, the right to appeal in forma pauperis and to proceed with assigned counsel as provided in Pennsylvania Rule of Criminal Procedure 122; and (d) the qualified right to bail under Pennsylvania Rule of Criminal Procedure 521(B).

By the Court,

Nancy L. Butts, President Judge

cc:     PD
        DA

16